IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
BRUNSWICK DIVISION

WILLIAM ARGO, MICHAEL G.     *
JOHNSON and JOHN M. SPANGLER,  *
                          *
     Plaintiffs,          *
                          *
     v.                 *      CV 212-213
                          *
Sheriff TOMMY J. GREGORY,      *
in his official capacity,     *
                          *
     Defendant.          *

## O R D E R

Presently before the Court is Defendant Sheriff Tommy Gregory's ("Sheriff") motion for summary judgment. (Doc. no. 27.) Plaintiffs, former deputies in the Camden County Sheriff's Office ("Sheriff's Office"), were terminated on June 29, 2011, as part of a reduction in force purportedly because of a limited budget. However, they allege that they were discriminated against on the basis of their age and retaliated against in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621, *et seq.* ("ADEA"). Additionally, Plaintiffs William Argo and Michael Johnson claim that they were discriminated against in violation of the American with Disabilities Act ("ADA"), 42 U.S.C. § 12102(1)(A). As discussed below, the Sheriff's motion for summary judgment is **GRANTED IN PART AND DENIED IN PART.**

# I. BACKGROUND

## A. Factual Background

### 1. Plaintiffs' Employment History and Terminations

This case arises out of Plaintiffs' employment with the Sheriff's Office. William Argo ("Argo") was hired in 2001 by former Sheriff Bill Smith as a corrections officer. (Argo Dep. at 8.) Argo remained in that position until 2005 when he obtained his POST certification and was transferred to work as a deputy in courthouse security. (Id. at 10; Argo Decl. ¶ 4.) Originally, he worked at the front desk, but was reassigned to the courtroom. (Argo Decl. ¶ 4.) Argo remained in this position until his termination. (Id. ¶ 5.)

Johnson, likewise, was hired by Sheriff Smith in 1996. (Johnson Decl. ¶¶ 1-2.) He was originally hired as a corrections officer and received a promotion to Sergeant within six months. (Id. ¶ 2.) In 1999, he became POST certified and was transferred to work as a patrol deputy shortly thereafter. (Id. ¶ 4.) After approximately six months on patrol, he was transferred to the civil service and courts division. (Id. ¶ 5.) In this position, his responsibilities included serving civil warrants, transporting prisoners, and occasionally working as a courtroom deputy. (Id. ¶ 7.) Johnson remained in this position until he was terminated. (See Doc. no. 31-1 ¶ 5.)

John Spangler was hired by Sheriff Smith in 2002. (Spangler Dep. at 8.) Although the record does not reflect the position Spangler worked when he was hired, he served as a transport officer at one point during his tenure. (Spangler Decl. ¶ 3.) He was transferred, however, several weeks prior to his termination and was working as a corrections officer when he was laid off. (Id. ¶¶ 2-3.)

On June 29, 2011, Plaintiffs, along with six other employees, were laid off. (See Doc. no. 31 at 8.) At the time of their termination, Argo was 70, Spangler was 56, and Johnson was 43. (Id.) Sheriff Gregory contends that the lay-offs were necessary due to an "underfunded budget." (Gregory Dep. at 6, 8.) Apparently, the Sheriff requested a budget for the 2012 fiscal year of approximately $8 million, but the Camden County Board of Commissioners approved a budget for the Sheriff's Office (including the Jail/Corrections division) of only $5.5 million. (Fender Dep. at 12.) Michael Fender, the Director of Finance for Camden County, testified that this represented a decrease of approximately $600,000 from the 2011 budget. (Id.) Plaintiffs argue the decrease was far less, only $164,170. (See Doc. no. 31-1 at 7.)

Sheriff Gregory explains that once he determined that lay-offs were necessary, he asked each division leader to rank his or her employees. (Gregory Dep. at 7.) Purportedly, the

3

employees at the bottom of each list were those at risk of being terminated. (Id.) Lori Whitlow, the Executive Administrative Assistant to Sheriff Gregory, supervised the courthouse security and warrants and civil service divisions. (Whitlow Aff. ¶¶ 2, 4.) She testified that in making her list, she considered an employee's work history, attendance, and any disciplinary actions. (Id. ¶ 9.) Applying these criteria, Argo and Johnson ranked at the bottom of their divisions. (Id. ¶ 10.)

Spangler, however, did not rank at the bottom of his supervisors' lists. Rather, April Palmer, his direct supervisor, ranked Spangler 22nd out of 35 employees. (See Doc. no. 31 at 25.) Similarly, Charles Byerly ranked Spangler 24th out of 34. (Id. at 26.) Byerly testified that in making his list he considered the employee's job performance, any disciplinary actions, and his own personal knowledge and opinion of the employee. (Byerly Dep. at 17.) Although Spangler was not ranked at the bottom of the list, Byerly explained that Spangler was one of two full-time transport officers. (Id. at 25-26, 31.) And because Jessica Miller, the other transport officer, was more essential, Spangler was terminated when the Sheriff made the decision that he only had the funds for one full-time transport officer. (Id. at 25-26, 31.)

## 2. 2012 Hirings

Despite laying off nine employees aged 70, 66, 56, 54, 50, 43, 41, and 38 because of allegedly limited funds,[1] Sheriff Gregory continued to advertise for and hire new employees throughout 2011 and 2012. In fact, the Sheriff hired three employees – one corrections officer and two deputies – on June 27, 2011, two days prior to the lay-offs. (See Doc. no. 31-1 at 8.) The ages of the new hires were 25, 39, and 51. (Id.)

As early as September 30, 2011, the Sheriff placed advertisements requesting applications for open correctional officer positions in the newspaper. (See Doc. no. 27-3 at 71.) And over the next several months, the Sheriff hired an additional eighteen employees, including four deputies, twelve corrections officers, one finance officer, and one administrative clerk. (See Doc. no. 31 at 8.) The ages of the new hires ranged from 19 to 51, and only three of the hires were over the age of 40. (Id.) Argo and Spangler testify that they were replaced by deputies with less training and experience who were significantly younger than them. (Argo Decl. ¶¶ 21-22; Spangler Decl. ¶¶ 14-15.) And Johnson claims that he was senior to and more qualified than his co-worker who was not terminated, Brenda Nason. (Johnson Decl. ¶¶ 14-15.)

---

[1] The record does not reflect the age of the ninth employee, Brandi Nelson. (See Doc. no. 31-1 at 8.)

Despite being aware of the advertisements, Plaintiffs did not reapply for employment with the Sheriff's Office. Plaintiffs did not believe that they needed to reapply because when they were terminated they were not informed that they would have to reapply if they wanted to return to service. (Argo Decl. ¶ 17; Johnson Decl. ¶¶ 12-13; Spangler Decl. ¶ 10.) They argue that they were not rehired because they filed claims of age discrimination with the EEOC shortly after their terminations. (See Doc. no. 31-1 at 29.)

### 3. Argo and Johnson's ADA Claims

Argo and Johnson also claim that Sheriff Gregory discriminated against them on the basis of their disabilities. (See Am. Compl. ¶¶ 44-61.) Specifically, Johnson suffered from hearing loss. However, Johnson did not file ADA discrimination charges with the EEOC. (See Doc. no. 27-4 at 115.) Argo, on the other hand, did file discrimination EEOC charges based upon his disability – colon cancer, which he was diagnosed with in 2010. (See Argo Decl. ¶ 9.) Following surgery to remove the cancer, Argo was out of work for approximately six weeks. (Id.) Despite undergoing chemotherapy treatments when he returned to work, his doctor did not place any limitations on him. (Argo Dep. at 27-28.) And while he did not suffer any side effects initially, after the third or fourth treatment he began to experience nausea and diarrhea. (Id. at 28-29.) His condition,

however, did not have any effect on his ability to carry out his duties other than the need to be able to take frequent restroom breaks. (Id. at 30, 32.)

## B. Procedural Background

On December 27, 2012, Plaintiffs filed suit in this Court. (Doc. no. 1.) The Sheriff filed a motion to dismiss the individual capacity claims on June 25, 2013. (Doc. no. 14.) Plaintiffs subsequently filed an Amended Complaint dropping the individual capacity claims, which were dismissed by Court Order on July 30, 2013. (Doc. nos. 17, 19.) On September 25, 2013, Sheriff Gregory filed his motion for summary judgment on all of Plaintiffs' claims. (Doc. no. 27.) The time for any further responses has expired, and the motions are ready and ripe for adjudication.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Facts are "material" if they could affect the outcome of the suit under the governing substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The Court must view the facts in the light most favorable to the non-moving party, Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986), and must draw "all justifiable inferences

in [its] favor." U.S. v. Four Parcels of Real Prop., 941 F.2d 1428, 1437 (11th Cir. 1991) (en banc) (internal punctuation and citations omitted).

The moving party has the initial burden of showing the Court, by reference to materials on file, the basis for the motion. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). How to carry this burden depends on who bears the burden of proof at trial. Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115 (11th Cir. 1993). When the non-movant has the burden of proof at trial, the movant may carry the initial burden in one of two ways — by negating an essential element of the non-movant's case or by showing that there is no evidence to prove a fact necessary to the non-movant's case. See Clark v. Coats & Clark, Inc., 929 F.2d 604, 606-08 (11th Cir. 1991) (explaining Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970) and Celotex Corp. v. Catrett, 477 U.S. 317 (1986)). Before the Court can evaluate the non-movant's response in opposition, it must first consider whether the movant has met its initial burden of showing that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. Jones v. City of Columbus, 120 F.3d 248, 254 (11th Cir. 1997) (per curiam). A mere conclusory statement that the non-movant cannot meet the burden at trial is insufficient. Clark, 929 F.2d at 608.

If — and only if — the movant carries its initial burden, the non-movant may avoid summary judgment only by "demonstrat[ing] that there is indeed a material issue of fact that precludes summary judgment." Id. When the non-movant bears the burden of proof at trial, the non-movant must tailor its response to the method by which the movant carried its initial burden. If the movant presents evidence affirmatively negating a material fact, the non-movant "must respond with evidence sufficient to withstand a directed verdict motion at trial on the material fact sought to be negated." Fitzpatrick, 2 F.3d at 1116. If the movant shows an absence of evidence on a material fact, the non-movant must either show that the record contains evidence that was "overlooked or ignored" by the movant or "come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency." Id. at 1117. The non-movant cannot carry its burden by relying on the pleadings or by repeating conclusory allegations contained in the complaint. See Morris v. Ross, 663 F.2d 1032, 1033-34 (11th Cir. 1981). Rather, the non-movant must respond with affidavits or as otherwise provided by Federal Rule of Civil Procedure 56.

In this action, the Clerk gave Plaintiffs appropriate notice of the motion for summary judgment and informed them of the summary judgment rules, the right to file affidavits or

other materials in opposition, and the consequences of default. (Doc. no. 28.) Therefore, the notice requirements of Griffith v. Wainwright, 772 F.2d 822, 825 (11th Cir. 1985) (per curiam), are satisfied.

## III. DISCUSSION

Plaintiffs allege claims for age discrimination and retaliation under the ADEA. In addition, Argo and Johnson bring discrimination claims under the ADA. Sheriff Gregory seeks summary judgment on all of Plaintiffs' claims. The Court will first address the Sheriff's contention that Plaintiffs' claims are procedurally barred before turning to Plaintiffs' ADEA and ADA claims.

### A. Administrative Exhaustion

Before reaching the merits of Plaintiffs' claims, the Court must first address Sheriff Gregory's contention that Plaintiffs' claims should be dismissed because they failed to exhaust their administrative remedies.[2] "In order to sue in court for violations of Title VII,[3] a plaintiff must exhaust administrative remedies, which means [he] must receive a right-to-sue letter from the EEOC." Wilkerson v. H & S, Inc., 366 Fed. Appx. 49, 50 (11th Cir. 2010); Forehand v. Fla. State Hosp. at Chattahoochee, 89 F.3d 1562, 1567 (11th Cir. 1996) ("Before instituting a Title

---

[2] The Court does not address Plaintiff Johnson's ADA claim in this section.
[3] The Sheriff appears to argue that the Title VII exhaustion requirements apply equally under the ADEA. Because Plaintiffs do not contest this argument, the Court applies the Title VII requirements.

VII action in federal district court, a private plaintiff must file an EEOC complaint against the discriminating party and receive statutory notice from the EEOC of his or her right to sue the respondent named in the charge."). Further, if, after the expiration of 180 days, the charge has not been dismissed and no other action has been taken by the EEOC, the EEOC is required to notify the claimant and that claimant may bring suit in district court within 90 days thereafter. 42 U.S.C. § 2000e-5(f)(1).

In the Eleventh Circuit, "the receipt of a right-to-sue letter is not a jurisdictional prerequisite to suit in district court, but rather, is a condition precedent subject to equitable modification." Forehand, 89 F.3d at 1567; see also Fouche v. Jekyll Island—State Park Auth., 713 F.2d 1518, 1525 (11th Cir. 1983) ("[A]ll Title VII procedural requirements to suit are henceforth to be viewed as conditions precedent to suit rather than jurisdictional requirements."). Here, Plaintiffs filed suit before receiving their right-to-sue letters. Consequently, they must rely upon equitable modification.

In this case, Plaintiffs filed suit on December 27, 2012. (Doc. no. 1.) Less than one month later they received their notices of right to sue. (See Doc. no. 17 at 16-18.) Plaintiffs' charges had been pending before the EEOC for approximately eighteen months and there is no evidence that

Plaintiffs interfered with or frustrated the EEOC's efforts to investigate their charges. Accordingly, equitable modification is proper, and as a result, the Court finds that Plaintiffs have exhausted their administrative remedies. See Pinkard v. Pullman-Standard, 678 F.2d 1211, 1219 (5th Cir. 1982) (holding that "the receipt of a right-to-sue letter subsequent to the commencement of a Title VII action, but while the action remains pending, satisfies the precondition that a plaintiff obtain statutory notice of the right to sue before filing a civil action under Title VII" where there was nothing to suggest that the plaintiffs in any way frustrated the EEOC's effort to investigate the charges); Cross v. State of Ala., State Dep't of Mental Health & Mental Retardation, 49 F.3d 1490, 1504 (11th Cir. 1995) (equitable modification was proper where plaintiffs filed suit more than two weeks *before filing their employment discrimination charge* with the EEOC but ultimately received their notices of right to sue approximately 60 days later); Sims v. Trus Joist MacMillan, 22 F.3d 1059, 1063 (11th Cir. 1994) (stating that an individual's right to sue is not conditioned upon the EEOC's performance of its administrative duties). Plaintiffs' claims are not barred for failure to exhaust their administrative remedies.

**B. Age Discrimination Claims**

Plaintiffs primarily assert age discrimination claims under the ADEA. Under the ADEA, it is "unlawful for an employer to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." Chapman v. AI Transport, 229 F.3d 1012, 1024 (11th Cir. 2000) (citing 29 U.S.C. § 623(a)(1)). A plaintiff may "establish a claim of illegal age discrimination through either direct evidence or circumstantial evidence." Van Voorhis v. Hillsborough Cnty. Bd. of Cnty. Comm'rs, 512 F.3d 1296, 1300 (11th Cir. 2008). When a plaintiff relies on circumstantial evidence to prove discrimination under the ADEA, as is the case here, courts employ the McDonnell-Douglas burden-shifting framework. Chapman, 229 F.3d at 1024. Under this framework, a plaintiff must first establish a prima facie case of discrimination. Id. A plaintiff may do so by showing that he was (1) a member of the protected age group, (2) subjected to an adverse employment action, (3) qualified to do the job, and (4) replaced by or otherwise lost a position to a younger individual. Id.

In situations involving a reduction in force, however, the employer seldom seeks a replacement for the discharged employee. Accordingly, the fourth prong of the prima facie case is altered to require that the plaintiff "produce evidence, circumstantial

or direct, from which the factfinder might reasonably conclude that the employer intended to discriminate in reaching the decision at issue." Mauter v. Hardy Corp., 825 F.2d 1554, 1557 (11th Cir. 1987) (citing Williams v. Gen. Motors Corp., 656 F.2d 120, 129 (5th Cir. 1981)). To establish the requisite discriminatory intent, the plaintiff must present evidence that could lead a reasonable factfinder to conclude that (1) the defendant consciously refused to consider retaining or relocating plaintiff because of his age, or (2) the defendant regarded age as a negative factor in its actions. Jones v. BE&K Eng'g Co., 146 Fed. Appx. 356, 359 (11th Cir. 2005).

If a plaintiff successfully establishes a prima facie case, the burden of production shifts to the employer to articulate some legitimate non-discriminatory reason for its action. Clark v. Coats & Clark, Inc., 990 F.2d 1217, 1227 (11th Cir. 1993). This intermediate burden is "exceedingly light," and once the employer offers a justification, the plaintiff must prove by a preponderance of the evidence that the employer's proffered reason for its actions is pretextual and that the employer did in fact intend to discriminate. Ward v. Gulfstream Aerospace Corp., 894 F. Supp. 1573, 1578 (S.D. Ga. 1995) (citing Batey v. Stone, 24 F.3d 1330, 1334 (11th Cir. 1994)).

1. *Prima Facie Case*

Plaintiffs have presented sufficient evidence to establish a prima facie case of age discrimination. Sheriff Gregory does not challenge that Plaintiffs are members of the protected class and that they were subject to an adverse employment action. Rather, the Sheriff contends that Plaintiffs were not qualified for their positions and have not produced evidence showing that he intended to discriminate. The Court disagrees.

First, Plaintiffs attended and graduated from the Georgia Peace Officer Training Council School and were POST-certified. (See Argo Decl. ¶ 3; Johnson Decl. ¶ 3; Spangler ¶ 4.) Each had extensive experience with the Sheriff's Office prior to their termination. Argo had been employed by the Sheriff's Office for approximately ten years and served as a courtroom deputy for six. (Argo Decl. ¶¶ 1, 5.) Johnson, similarly, was a fourteen-year veteran with the Sheriff's office and had served over ten years in his post as a civil service deputy. (Johnson Decl. ¶¶ 1, 5.) In addition, Spangler had been employed with the Sheriff's Office for approximately nine years and was certified as a jailer. (Spangler Decl. ¶¶ 1, 4.) He was also certified in accident reconstruction, lidar, radar, field sobriety, intolizer 5000, and basic first aid. (Id. ¶ 5.) Other than conclusory assertions to the contrary, Defendants have not produced or cited to any evidence that shows that Plaintiffs were unqualified for their positions.

Second, Plaintiffs have produced sufficient circumstantial evidence to satisfy their burden to produce some evidence of discriminatory intent. Plaintiffs have demonstrated that the Sheriff engaged in a pattern of firing older employees while hiring substantially younger employees. For example, the ages of individuals terminated due to purported budgetary constraints were 70, 66, 56, 54, 50, 43, 41, and 38. (See Doc. no. 31 at 8.) At the same time, the ages of the employees hired during the 2012 fiscal year were 19, 19, 22, 23, 24, 25, 25, 26, 26, 28, 30, 33, 33, 34, 34, 37, 38, 39, 43, 47, and 51. (Id.) In addition to this pattern, Plaintiffs testified regarding a conversation Roger Dyals had with Kevin Barber in which Barber told Dyals that "he did not understand why Sheriff Gregory was making comments about doing something about the 'old people' at the courthouse." (Argo Decl. ¶ 13; Johnson Decl. ¶ 8; Spangler Decl. ¶ 6.) Barber said, "I don't know why the Sheriff is so bound and determined to get rid of you and that other 'greybeard,'" pointing to Argo. (Argo Decl. ¶ 13; Johnson Decl. ¶ 8; Spangler Decl. ¶ 6.) Although Johnson and Spangler are not specifically named, this testimony along with the pattern of discriminatory terminations is sufficient to satisfy Plaintiffs' burden to produce *some* evidence of the Sheriff's discriminatory intent.[4]

---

[4] Although Argo, Johnson, and Spangler testify to these remarks, Sheriff

### 2. Legitimate Nondiscriminatory Reason

Because Plaintiffs have established a prima facie case, Sheriff Gregory must articulate a legitimate, nondiscriminatory reason for the termination of Plaintiffs. Sheriff Gregory asserts that Plaintiffs were terminated because the Sheriff's Office budget was cut by approximately $600,000 for the 2012 fiscal year. Because the majority of the Sheriff's Office budget is spent on employees' salaries, he claims that he was forced to lay off several employees. In order to carry out the cuts, he testified that he instructed each division chief to rank their subordinates and that the employees at the bottom of the list may lose their job. (Gregory Dep. at 7.) Thus, the Sheriff has met his burden of articulating a legitimate nondiscriminatory reason for the termination of Plaintiffs. See Chavez v. URS Fed. Tech. Servs., Inc., 504 Fed. Appx. 819, 821 (11th Cir. 2013) (finding that a budget cut was a legitimate, nondiscriminatory reason for termination).

### 3. Pretext

Accordingly, in order to avoid summary judgment, Plaintiffs must introduce significantly probative evidence showing that the asserted reason for their termination is merely pretext for

---

Gregory challenges only Argo's testimony regarding these statements as hearsay. Thus, without resolving whether Argo's statements are admissible, the Court finds that Johnson and Spangler's testimony regarding these statements (along with the pattern of younger hires) is sufficient to successfully prove a prima facie case. (See Doc. no. 35 at 19.)

discrimination. "The burden of proving pretext merges with the plaintiff's ultimate burden of proving that age was a determining factor in his discharge, and it can be met by showing that a discriminatory reason more likely than not motivated the employer's decision, or by discrediting the employer's proffered explanation." Clark, 990 F.2d at 1228. Plaintiffs must "meet the proffered reason head on and rebut it, and the employee cannot succeed by simply quarreling with the wisdom of that reason." Brooks v. Cnty. Comm'n of Jefferson Cnty., Ala., 446 F.3d 1160, 1163 (11th Cir. 2006). Thus, Plaintiffs must produce sufficient evidence to allow a reasonable finder of fact to conclude that Sheriff Gregory's articulated reason is not believable. They may do this by showing "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" in the proffered explanation. Id. "A reason is not pretext for discrimination 'unless it is shown both that the reason was false, and that discrimination was the real reason.'" Id.

Sheriff Gregory contends that summary judgment is appropriate because Plaintiffs have not shown that his legitimate, nondiscriminatory reason is unworthy of credence. Plaintiffs, however, present the following evidence: (1) despite the budget shortfall, the Sheriff hired three individuals two days prior to terminating Plaintiffs; (2) the Sheriff also hired

eighteen additional employees during the 2012 fiscal year; (3) the Sheriff deviated from his ranking system on at least two separate occasions; and (4) the Sheriff made several discriminatory comments that evidence a discriminatory intent. The Court concludes that Plaintiffs' evidence is significantly probative and demonstrates weaknesses and inconsistencies in the Sheriff's proffered explanation. Therefore, Plaintiffs have met their burden in demonstrating pretext.

First, despite the apparent budgetary constraints which necessitated the termination of nine trained and experienced employees, the Sheriff approved the hire of three individuals on June 27, 2011, two days prior to the layoffs. (See Doc. no. 31 at 8.) The ages of the three individuals hired were 25, 39, and 51, which stands in stark contrast to the ages of the terminated employees: 70, 66, 56, 54, 50, 43, 41, and 38.[5] (Id.)

Second, in addition to the pre-termination hires, Sheriff Gregory continued to hire employees throughout the 2012 fiscal year despite the reduced budget. Specifically, the Sheriff hired six individuals in the Sheriff's Office, including four deputy sheriffs (ages 26, 30, 33, and 37), two of which were part time. (See Doc. no. 31 at 8.) The Sheriff also hired a finance officer, an administrative clerk, and twelve individuals in the Jails/Corrections division. (Id.) The ages of these

---

[5] The record does not indicate the age of Brandi Nelson, one of the individuals terminated on June 29, 2011. (See Doc. no. 31 at 8.)

individuals were 19, 19, 22, 23, 24, 25, 26, 28, 33, 34, 34, 38, 43, and 47. (Id.)

Third, Plaintiffs presented evidence that the Sheriff deviated from his purported ranking system on at least two different occasions. Sheriff Gregory testified:

> I asked my division chiefs, captains, supervisors – not all of them were the ranking captain, but most of them are – to "rank your people, one being your best employee, one being the ones" – the bottom of the list being the ones that could potentially be let go.

(Gregory Dep. at 7.) The Sheriff, however, did not follow this procedure in determining to terminate Spangler and at least one other employee for the June 29, 2011 layoffs. Spangler, a deputy in the corrections division, was ranked 22nd out of 35 and 24th out of 34 employees on separate lists made by Charles Byerly and April Palmer. (See Doc. no. 31 at 25-26.) Despite not being ranked at the bottom by either supervisor, he was terminated. Although the Sheriff explains that Spangler was terminated because there were insufficient funds for two full-time transport deputies, there is no evidence that Sheriff Gregory created any separate list for that position at that time. Similarly, Captain Jeremy Rogers, the investigative division chief, was terminated despite not being at the bottom of any ranking list. Indeed, the record indicates that he was responsible for creating a ranking list. (Gregory Dep. at 51.) When questioned, Sheriff Gregory testified that Rogers was "a

division chief so I probably put him on the list . . . . I put Jeremy Rogers on a – I didn't make a written list but Jeremy Rogers was one of the ones I laid off . . . . because he's a division chief so I solely would have had to make that decision." (Id. at 51-52.) When read in the light most favorable to Plaintiffs, these deviations from the Sheriff's purported ranking system can create a genuine issue of material fact of pretext. See Hurlbert v. St. Mary's Health Care System, Inc., 439 F.3d 1286, 1299 (11th Cir. 2006) (reversing summary judgment, in part because "an employer's deviation from its own standard procedures may serve as evidence of pretext").

Fourth, the Sheriff made multiple comments suggesting a discriminatory intent. (Argo Decl. ¶ 13; Johnson Decl. ¶ 8; Spangler Decl. ¶ 6.) In sum, Plaintiffs marshal significant circumstantial evidence that the Sheriff's budgetary explanation for the terminations was pretextual. Plaintiffs have met the proffered legitimate nondiscriminatory reason for their terminations "head on," by demonstrating "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" that would permit findings of pretext and discrimination. See Brooks, 446 F.3d at 1163. Therefore, the Sheriff's motion for summary judgment on Plaintiffs' ADEA age discrimination claims is **DENIED**.

**C. ADEA Retaliation Claims**

Plaintiffs also bring claims for retaliation under the ADEA, alleging that Sheriff Gregory took an adverse employment action against them by not rehiring them in retaliation for their filing complaints of age discrimination with the EEOC. To establish a prima facie case of retaliation under the ADEA, a plaintiff must present evidence that: (1) he engaged in statutorily protected conduct; (2) he suffered an adverse employment action; and (3) the adverse action was causally related to the protected activity. Thomas v. Cooper Lighting, Inc., 506 F.3d 1361, 1363 (11th Cir. 2007).

To satisfy the adverse employment action requirements, "the plaintiff must show that a reasonable employee would have found the challenged action materially adverse." Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006). A materially adverse action is one that "might have dissuaded a reasonable worker from making or supporting a charge of discrimination." Id. "An employer's failure to recall or rehire an employee is 'undoubtedly an adverse employment action' where the employee reapplied for the position after termination." Jones v. Ala. Power Co., 282 Fed. Appx. 780, 785 (11th Cir. 2008). "If the employer uses formal procedures to announce positions and identify candidates, the plaintiff cannot make out a prima facie case unless he shows that he applied for the position." Id. (citing Vessels v. Atlanta Indep. Sch. Sys., 408 F.3d 763, 768

(11th Cir. 2005)). "Furthermore, under such circumstances, a general interest in being rehired without submitting an application is insufficient to satisfy the application requirement." Id. (citing Smith v. J. Smith Lanier & Co., 352 F.3d 1342, 1345 (11th Cir. 2003)).

Here, the parties do not dispute that Plaintiffs engaged in statutorily protected conduct when they filed EEOC charges of age discrimination. Rather, Sheriff Gregory contends that Plaintiffs did not suffer any adverse employment action because they did not reapply for any positions with the Sheriff's Office after their termination despite knowing about the openings. Plaintiffs argue that they did not reapply because they were not told by the Sheriff that they needed to reapply. (See Argo Decl. ¶ 17; Johnson Decl. ¶ 12; Spangler Decl. ¶ 10.) Yet, when asked whether he expected to be contacted by the sheriff when a position came open, Argo testified, "No." (Argo Dep. at 21-22.) Johnson testified that when he was terminated, Sheriff Gregory told him that he was "put down for rehire." (Johnson Dep. at 21, 37.) But he didn't reapply because he "was sure they wasn't hiring." (Id. at 37.) Similarly, Spangler was told that he was eligible for rehire and that he would be "one of the first to be rehired." (Spangler Dep. at 14.) Despite being aware that others were being hired, he testified that he never reapplied because he was never contacted. (Id.) Plaintiffs testified

that it was their understanding that after an employee is laid off, he will later be recalled to return when the reason for the layoff no longer exists.[6] (Argo Decl. ¶ 18; Johnson Decl. ¶ 14; Spangler Decl. ¶ 11.)

Plaintiffs also introduce evidence that on at least one occasion, an employee that had been previously terminated received a telephone call asking her to come back to work. (Chancey Dep. at 8-9.) Plaintiffs argue that taken together, these facts permit a reasonable jury to find that they were not rehired in retaliation for their EEOC age discrimination charges.

The Court, however, disagrees. It is undisputed that the Sheriff's Office used formal procedures to announce the open positions and identify candidates by advertising in the newspaper and requesting applications for those interested. It is also undisputed that Plaintiffs were aware that the Sheriff's Office had hired several individuals and yet they did not submit applications. Moreover, Plaintiffs have not cited to any case or provided sufficient facts that excuse their failure to apply. Ms. Chancey's testimony – that one terminated employee received a call back - is insufficient by itself to create a genuine factual dispute that Sheriff Gregory had a standard practice of

_____

[6] Plaintiffs assert without citation that it is a "consistent practice with most workplaces when individuals are laid off" for employers to call them on the telephone and not require them to reapply. (Doc. no. 31-1 at 29.)

recalling previously terminated employees without having them reapply.

Although Plaintiffs were not told that they needed to reapply,[7] "[i]t is not unfair or unduly burdensome to expect a plaintiff to submit an application for that vacancy as a prerequisite for stating a failure-to-hire claim." Velez v. Janssen Ortho, LLC, 467 F.3d 802, 808 (1st Cir. 2006). In the absence of evidence either that the Sheriff's Office had a standard practice of recalling previously terminated employees without having them reapply or they were told that they need not reapply, Plaintiffs have not shown that they suffered any adverse employment action and thus cannot make out a prima facie case of retaliation. See Jones, 282 Fed. Appx. at 785. Consequently, summary judgment in favor of Sheriff Gregory is appropriate on Plaintiffs' ADEA retaliation claims.

**D. ADA Claims**

Argo and Johnson also allege claims under the ADA. The Court addresses each of these below.

*1. Johnson's ADA Claims*

Johnson alleges that he was laid off because of his age, but also because of his hearing impairment. (See Johnson Dep. at 11.) Thus, be believes he is entitled to recover under the ADA.

---

[7] The Court notes that Sheriff Gregory testified that each of the Plaintiffs were told that they could reapply. (Gregory Dep. at 27.) While this testimony is not necessarily inconsistent with Plaintiffs' declarations, the Court, nevertheless, accepts Plaintiffs' testimony as true and construes all reasonable inferences in their favor.

(See Am. Compl. ¶¶ 44-61.) However, Johnson concedes that his ADA claims are barred because he did not exhaust his administrative remedies by filing an ADA charge with the EEOC. (Doc. no. 31-1 at 30.) Accordingly, Johnson's ADA claims are **DISMISSED**.

### 2. *Argo's ADA Claims*

Argo also alleges that he was terminated due to his colon cancer in violation of the ADA. In support of his claim, Argo cites to three statements, two made by Amanda Crosby and one made by Sheriff Gregory. First, Crosby told Argo that the Sheriff stated that he did not care what Argo was going through, he was going to get rid of Argo no matter what. (Argo Decl. ¶ 12.) Second, Crosby testified in her deposition that:

> [Sheriff Gregory said] if he couldn't come back to work and do a hundred percent of his job then he needed to be gone from here, and I said, "Well, you know, he's going to get treatments; he's coming to work." I said, "We were trying to help him out at the front desk and give him light duty, you know, so that way he can work," and that was unacceptable. I was told if he couldn't go [sic] his job a [sic] one hundred percent, then he needed to go to the house.

(Crosby Dep. at 93.)[8] And third, the Sheriff testified that Argo "was not 100% of the Argo that I knew him before the treatments or after the treatments. I mean, it did take its toll on him." (Gregory Dep. at 27-28.) Argo, without explanation or citation,

---

[8] Crosby's deposition was not on record in this case. Although the Sheriff argues that it is therefore outside of the Court's consideration, the Court need not decide this issue as it finds that Argo's claim fails.

concludes that this evidence creates a jury question on the "ultimate inquiry" – whether Sheriff Gregory improperly considered Argo's disability in his determination to terminate him.

The Court finds Argo's response to Sheriff Gregory's summary judgment motion deficient. In his response brief and sur-reply brief, Argo never makes the *slightest attempt* to provide, let alone explain, the proper legal standards governing his ADA claims, provide *any* citations to cases in support of his contention that summary judgment is inappropriate, formulate *any* argument as to how this testimony satisfies his burden, or respond to the arguments presented by Sheriff Gregory. Rather, Argo apathetically claims that this scattered record evidence answers the "ultimate inquiry."

There is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment. Blue Cross & Blue Shield v. Weitz, 913 F.2d 1544, 1550 (11th Cir. 1990). Rather, the onus is upon the parties to formulate arguments. Road Sprinkler Fitters Local Union No. 669 v. Indep. Sprinkler Corp., 10 F.3d 1563, 1568 (11th Cir. 1994). "[T]he court is under no duty to exercise imagination and conjure what a plaintiff might have alleged, but did not, and do counsel's work him or her." Pinto v. Universidad De Puerto Rico, 895 F.2d 18, 19 (1st Cir. 1990). "It is not for

27

the court to manufacture arguments on Plaintiff's behalf." Bowden ex rel. Bowden v. Wal-Mart Stores, Inc., 124 F.Supp.2d 1228, 1236 (M.D. Ala. 2000). A litigant who fails to rebut arguments propounded by its adversary "adopts this strategy at its peril, inasmuch as this Court will not formulate a party's arguments for it." Morgan v. N. Miss. Med. Ctr., Inc., 403 F.Supp. 2d 1115, 1120 (S.D. Ala. 2005).

Simply put, Argo has failed to establish a genuine issue of material fact for jury resolution. Consequently, Argo's ADA claims fail and the Sheriff's motion for summary judgment is **GRANTED**.

### IV. CONCLUSION

For the reasons set forth above, Sheriff Gregory's motion for summary judgment (doc. no. 27) is **GRANTED IN PART AND DENIED IN PART**. This case shall proceed to trial on Plaintiffs' age discrimination claims.

**ORDER ENTERED** at Augusta, Georgia, this _10th_ day of September, 2014.

_____
HONORABLE J. RANDAL HALL
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF GEORGIA